UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

       Plaintiff,

v.                                                                                    Case No. 02-80823

DENVER HARRIS,                                                      Honorable Patrick J. Duggan

       Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF DOUBLE JEOPARDY OR, IN THE ALTERNATIVE, FOR AN EVIDENTIARY HEARING

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 8, 2005.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

Defendant Denver Harris ("Defendant") is charged in this case by way of Indictment with one count of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846. Presently before the Court is Defendant's motion to dismiss the Indictment, based on the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Defendant alternatively requests an evidentiary hearing in order to demonstrate the factual allegations in his motion. The Court held a hearing on Defendant's motion on July 7, 2005. For the reasons set forth

below, Defendant's motion must be denied and the Court finds no reason to conduct an evidentiary hearing.

## Factual and Procedural Background

On September 10, 2002, a federal grand jury issued an Indictment charging Defendant with one count of conspiracy to possess with intent to distribute and to distribute cocaine. The Indictment alleges that the conspiracy existed from on or about December 1, 1998, continuing to the date of the Indictment. The Indictment specifically describes one act in furtherance of the conspiracy– a shipment of cocaine from California to Michigan on December 12, 1998.

Previously, on July 8, 1998, the Oakland County Prosecutor's Office charged Defendant in a State of Michigan Complaint with one count of conspiracy to possess with the intent to deliver over 650 grams of cocaine. *See* Def.'s Mot. Ex. A. Also charged in the State Complaint was Lora Belinda Harris ("Ms. Harris"), Defendant's alleged co-conspirator. Ms. Harris was charged with one count of conspiracy to possess with intent to deliver over 650 grams of cocaine, as well as an additional count of delivery of more than 650 grams of cocaine. *See id*.

On September 28, 1999, a jury trial was commenced in the State Court against Defendant. At the conclusion of the State's case, Defendant moved for a directed verdict. The court granted Defendant's motion on October 22, 1999, and the charge against him was dismissed.

According to Defendant, Ms. Harris was convicted of both charges levied against her and she subsequently was sentenced to two concurrent mandatory terms of life

imprisonment without the possibility of parole. Defendant claims that even though Ms. Harris already had been convicted and sentenced, she subsequently was allowed to enter a plea to a less serious offense pursuant to a plea agreement authored by the Oakland County Prosecutor's Office. Before Ms. Harris was sentenced pursuant to her plea, specifically on December 19, 2000, she testified before the federal grand jury that indicted Defendant. Ms. Harris subsequently was sentenced to a term of imprisonment of four years.

## Applicable Law and Analysis

Defendant argues that his acquittal in State Court mandates dismissal of the pending federal Indictment pursuant to the Double Jeopardy Clause. The Double Jeopardy Clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . ." U.S. CONST. amend. V. As Defendant acknowledges, however, the Double Jeopardy Clause does not bar prosecutions for the same conduct by dual sovereigns. *United States v. Wheeler*, 435 U.S. 313, 317, 98 S. Ct. 1079, 1082-83 (1978).

In fact, it is well established that an acquittal or a conviction in a state court under a state law will not bar a prosecution in a federal court under a federal law based on the same act or transaction unless the federal law under which the prosecution is sought expressly provides to the contrary. *See, e.g., Abbate v. United States*, 359 U.S. 187, 79 S. Ct. 666 (1959); *Bartkus v. State of Illinois*, 359 U.S. 121, 79 S. Ct. 676 (1959); *United States v. Holmes*, 111 F.3d 463, 467 (6th Cir. 1997); *Smith v. United States*, 243 F.2d 877, 878 (6th Cir. 1957); *see also Wheeler*, 435 U.S. at 317, 98 S. Ct. at 1082-83 (reaffirming

3

*Bartkus* and *Abbate*).  The *Bartkus* Court, however, implied that there is an additional, limited exception to this well-established rule.  *Bartkus*, 359 U.S. at 123-24, 79 S. Ct. at 678.  This exception is commonly referred to as the "sham prosecution" exception.

In *Bartkus*, the defendant challenged his conviction in state court because he previously had been tried and acquitted in federal court based on the same acts.  The Supreme Court rejected the defendant's challenge, stating:

> [The record] does not support the claim that the State of Illinois in bringing its prosecution was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal.  It does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution.

*Bartkus*, 359 U.S. at 123-24, 79 S. Ct. at 678.  As the Tenth Circuit has explained the implication from this statement: "when one sovereign is acting as 'merely a tool' of the other, and the second prosecution is merely a 'sham and cover' for a previously unsuccessful prosecution, the second prosecution violates the Double Jeopardy Clause."  *United States v. Trammel*, 133 F.3d 1343, 1349 (1998).

"Although frequently noted, *Bartkus*' exception is 'an extremely narrow one' and is rarely applied."  *Id*. (quoting *United States v. Paiz*, 905 F.2d 1014, 1024 (7th Cir. 1990)); *see also United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996)(explaining that *Bartkus*' exception is "limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings.")  As the Seventh Circuit has found, the

4

exception "has been discussed by courts in the process of rejecting its application ever since [it was raised in *Bartkus*]." *United States v. Rector*, 111 F.3d 503, 507 (1997). This Court located only three Sixth Circuit cases discussing *Bartkus*' exception and in none was the exception applied to grant the defendant relief. *United States v. McDonald*, No. 95-6001, 1996 WL 506517 (6th Cir. September 5, 1996)(unpublished op.); *United States v. Carr*, No. 94-2415, 1996 WL 99318 (6th Cir. March 6, 1996)(unpublished op.); *United States v. Odom*, No. 93-2526, 1994 WL 669675 (6th Cir. November 29, 1994)(unpublished op.).

Defendant cites only one case where the exception was applied: *United States v. Belcher*, 762 F. Supp. 666 (W.D. Va. 1991). In *Belcher* the defendants initially were charged in state court with manufacturing marijuana and using a firearm in the commission of a felony (i.e. manufacturing marijuana). *Id*. at 668. The state court dismissed the indictment as to one of the defendants. *Id*. The other defendant was convicted of manufacturing marijuana; however, the state court subsequently granted the defendant's motion for a new trial. *Id*. The state prosecutor decided to forego a new trial based on the first indictment; instead securing a new indictment alleging additional charges. *Id*. After the defendant moved to dismiss the new indictment and while the motion was pending, the prosecutor– who was also serving as a Special Assistant United States Attorney– pursued a federal indictment charging both defendants with violations arising from the same conduct on which the state charges were based. *Id*. at 668-69.

Relying on vindictive prosecution and collateral estoppel grounds, the federal court dismissed the indictments. Central to the court's holding was the fact that the state

5

and federal charges were pursued by the same prosecutor, Tim McAfee, acting as an attorney for the State of Virginia and as a Special Assistant United States Attorney for the Western District of Virginia.  *Id*. at 670-71.  The court explained that it understood *Bartkus* as resting on principles of dual sovereignty and its exception as being "best understood and applied in a situation where the principles of federalism are blurred and 'the power of centralized government' works to deprive a citizen of fundamental rights." *Id*. at 670.  As the district court explained, McAfee's dual role blurred the distinction between the two sovereigns:

> The facts show that McAfee has the ability to function (and has functioned) as a prosecutor at both the State and federal levels in this case.  The kind of power McAfee possesses here is inconsistent with the concepts of federalism implicit in the Constitution . . . In fact, it seems to the court that if the same prosecutor simultaneously derives power from both a State and the federal government, then the whole underpinning of federalism is destroyed.  The fact that the two sovereigns have essentially pooled their powers in one prosecutor strongly suggests to the court that in reality there are no longer two sovereigns at work.

*Id*. at 670-71.  Defendant claims the present matter is similar to the situation presented in *Belcher*.

Defendant contends that the prosecutors in Oakland County, frustrated with their inability to convict Defendant in state court, "turned their efforts to the United States government, and apparently controlled the current prosecution in an effort to get that which they failed to get in state court."  *See* Def.'s Mot. at ¶ 10.  The primary evidence Defendant offers to demonstrate the state prosecutors' "control" over the current case is their offering of a plea deal to Ms. Harris, subsequent to her original conviction, whereby

6

she agreed to testify against Defendant in exchange for a plea to a less serious offense and a significantly reduced sentence. Defendant further points out that it was the State that first investigated, charged, and prepared the evidence to prosecute him; and that the State simply turned its information over to the federal government. *See id.* ¶ 12.

These facts do not demonstrate the type of "blurring" between the sovereigns present in *Belcher*. Further, as *Bartkus* illustrates, these facts are insufficient to demonstrate that the federal government is acting as a tool or serving as a sham or cover for the State in prosecuting this case. *Bartkus* in fact involved similar conduct by the federal government with respect to the subsequent state prosecution. As the Supreme Court described:

> It is true that the agent of the Federal Bureau of Investigation who had conducted the investigation on behalf of the Federal Government turned over to the Illinois prosecuting officials all the evidence he had gathered against the petitioner . . . The only other connection between the two trials is to be found in a suggestion that the federal sentencing of the accomplices who testified against petitioner in both trials was purposely continued by the federal court until after they testified in the state trial . . .

*Bartkus*, 359 U.S. at 122-24, 79 S. Ct. at 677-78. Despite these facts, the Supreme Court found the federal officials' cooperation with state authorities to be "the conventional practice between the two sets of prosecutors throughout the country" and that such cooperation "does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution . . ." *Id.* at 123-24, 79 S. Ct. at 678.

A defendant attempting to persuade a court to apply the "sham prosecution" exception has a "substantial burden of proving [that] one sovereign is so dominated by the

7

actions of the other that the former is not acting of its own volition." *Trammell*, 133 F.3d at 1350 (quoting *United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir. 1991)). A defendant does not satisfy this burden merely by showing that "the state has conducted the majority of the investigation relied upon by the government in federal prosecution of the defendant." *Id.* (citing *United States v. Bernhardt*, 831 F.2d 181, 183 (9th Cir. 1987)). Courts also have not invoked *Bartkus*' exception simply because "a state prosecutor, after unsuccessfully prosecuting a defendant, encourages or requests federal authorities to prosecute the defendant." *Id.* (citing *United States v. Tirrell*, 120 F.3d 670, 677 (7th Cir. 1997)). As the Sixth Circuit held in *Odom*, a state prosecution does not bar a subsequent federal prosecution "when state authorities referred [the defendant's] case to federal authorities for prosecution 'as long as prosecutors are not acting as rubber stamps and exert their own discretion as to whether or not to prosecute.'" *Odom*, 1994 WL 669675, at *2 (quoting *United States v. Allen*, 954 F.2d 1160, 1166 (6th Cir. 1992)).

Particularly relevant here, in *Carr* the Sixth Circuit rejected a double jeopardy challenge brought by defendants prosecuted in federal court following a directed verdict in state court, even though the federal prosecutor and the state prosecutor had once worked together and the federal jury trial was nearly identical to the state trial. *Carr*, 1996 WL 99318, at *2-3. As the Tenth Circuit has recognized, the fact that the witnesses and evidence are the same in both prosecutions is not persuasive as "[t]he witnesses and exhibits that are key to the prosecution will not change merely because the prosecution moves from state to federal court." *Id.* at 1351.

Based on these decisions, the Court does not conclude that the federal government

is merely acting as a tool of the State in bringing this prosecution; nor does the Court find this prosecution to be merely a sham and a cover for another State prosecution. That the Oakland County Prosecutor's Office may have first investigated, charged, and prepared the evidence to prosecute Defendant, arranged a plea deal with Ms. Harris to secure her cooperation in the federal case, and encouraged or requested the federal authorities to prosecute Defendant, does not prove that the federal government "'is so dominated by the actions of the [State] that [it] is not acting of its own volition.'" *Trammell*, *supra*. According to the Assistant United States Attorney handling this case, after he was contacted by a prosecutor from Oakland County, he independently reviewed the evidence provided by the State, independently decided whether to proceed with a further investigation, and then independently decided whether to pursue an indictment. *See* Govt.'s Resp. at 1-2. Contrary to Defendant's claim, there is no evidence suggesting that the State is "controlling" this prosecution or that the federal government is acting as a "rubber stamp."

Defendant does not allege any facts sufficient to invoke *Bartkus*' exception, therefore the Court finds it unnecessary to hold a hearing to allow Defendant to present evidence and witnesses sufficient to establish the allegations contained in his motion. As the Court finds that the federal government is acting independently from the State in pursuing its Indictment against Defendant, the Court concludes that the Double Jeopardy Clause is not a bar to the pending charge against Defendant.

Accordingly,

**IT IS ORDERED**, that Defendant's Motion to Dismiss for Violation of Double

9

Jeopardy or, in the Alternative, for an Evidentiary Hearing is **DENIED**.

_____
s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Paul J. Stablein, Esq.
AUSA Michael Leibson